U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED
'09 JUL 29 P3:00
JON W. SANFILIPPO
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TOPRX, INC.,

    Plaintiff,

vs.

CEDARBURG PHARMACEUTICALS, INC.
AND CEDARBURG GENERIC, LLC,

    Defendants.

Civil Action No.

09-C-0742

## COMPLAINT

Plaintiff, TopRx, Inc., by and through undersigned counsel, as and for its Complaint against the Defendants alleges as follows:

### PARTIES

1. The Plaintiff, TopRx, Inc., a Tennessee corporation (hereinafter referred to as "Plaintiff" or "TopRx"), is a corporation duly organized pursuant to the laws of the State of Tennessee. TopRx is principally located at 3141 Stage Post Drive, Bartlett, Tennessee, 38133.

2. The Defendant, Cedarburg Pharmaceuticals, Inc. ("Cedarburg Pharmaceuticals"), is a corporation organized and existing under laws of the state of Delaware with its principal office located at 870 Badger Circle, Grafton, Wisconsin 53024.

3. The Defendant, Cedarburg Generic, LLC, ("Cedarburg Generic") is a limited liability company organized and existing under the laws of the state of Wisconsin with its principal office located at 870 Badger Circle, Grafton, Wisconsin 53024. Upon information and belief, Cedarburg Pharmaceuticals is the sole member of Cedarburg Generic.

## JURISDICTION AND VENUE

4. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) based on the diversity of citizenship of the parties and the amount in controversy (without interest and costs) exceeding $75,000.00.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (c).

## FACTUAL BACKGROUND

6. On May 15, 2007, Cedarburg Pharmaceuticals executed and made that certain promissory note in favor of TopRx, as holder, in an amount equal to Six Hundred Twenty Two Thousand Five Hundred and no/100 ($622,500.00), together with interest thereon at the rate of eight percent (8%) per annum (the "Note"). A copy of the Note is attached hereto as **Exhibit A**, and incorporated by reference herein.

7. The payment terms under the Note required Cedarburg Pharmaceuticals to pay TopRx as follows:

> Each quarter, an amount equal to (i) any and all of accrued interest on the principal sum, and (ii) twenty percent (20%) of the gross sales of Cedarburg Generic, LLC, a Wisconsin limited liability company ("Cedarburg Generic") based on the gross sales during the immediately prior calendar quarter shall be due and payable. Such payments of principal and interest shall be due on January 5, April 15, July 15, and October 15 of each year until all of the principal and interest due hereunder are paid. For example, on July 15, 2007, Maker shall pay to Holder an amount equal to (i) all accrued and unpaid interest through July 15, 2007, plus (ii) an amount equal to twenty percent (20%) of Cedarburg Generic's gross sales from April 1, 2007 to June 30, 2007.
>
> All accrued interest, principal and any other sums due on this Note shall be due and payable on the third (3rd) anniversary of the date of this Note.

8. The Note provides that in the event of default, "the interest rate of the Note shall increase to the maximum rate allowed by law and the holder of this Note shall have the option to pursue all legal and equitable remedies available under Wisconsin law." The Note further allows

for attorney's fees and expenses should the Note be placed in the hands of an attorney for collection.

9. This Note was secured by that certain Security Agreement dated May 15, 2007, and executed by and among, Cedarburg Pharmaceuticals and Cedarburg Generic as guarantors, and TopRx, as the secured party ("Security Agreement"). A copy of the Security Agreement is attached hereto as **Exhibit B**, and incorporated by reference herein.

10. Cedarburg Pharmaceuticals made two (2) payments on the Note. Said payments were the payments due on October 15, 2007, and January 15, 2008, in accordance with the terms of the Note.

11. Cedarburg Pharmaceuticals failed to make the payment due on April 15, 2008 or make any payments anytime thereafter. The failure to make payments required by the Note constitutes a default under the terms of the Note.

12. Demand was made upon Cedarburg Pharmaceuticals to cure its default by payment of all sums due under the terms of the Note, however, Cedarburg Pharmaceuticals has failed and refused to cure its default.

13. As a result of Cedarburg Pharmaceutical's default under the terms of the Note, both Cedarburg Pharmaceuticals and Cedarburg Generic are in breach of the terms of the Security Agreement.

## COUNT I
**(Cedarburg Pharmaceuticals) Breach of the terms of the Promissory Note**

14. The Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 13 of this Complaint.

15. Cedarburg Pharmaceuticals is in breach of the terms of the Note by its failure to make required payments thereunder.

16. Pursuant to the terms of the Note, Cedarburg Pharmaceuticals is liable for not only the unpaid principal, accrued interest and late charges on the Note, but also Plaintiff's costs and expenses of collection, including attorney's fees.

17. As a result of Cedarburg Pharmaceuticals' breach of the Note, Plaintiff has been damaged in an amount in excess of $700,000.

## COUNT II
**(Cedarburg Pharmaceuticals and Cedarburg Generic) Breach of Security Agreement**

18. The Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 17 of this Complaint.

19. Defendants are in breach of the terms of the Security Agreement by their failure to make required payments under the Note.

20. As a result of Defendants' breach of the Security Agreement, Plaintiff has been damaged in an amount in excess of $700,000.

WHEREFORE, Plaintiff TopRx, Inc. demands judgment against Cedarburg Pharmaceuticals and Cedarburg Generic as follows:

1. Money damages for unpaid principal, accrued interest and late charges on the Note in an amount exceeding $700,000.

2. Damages resulting from Defendants' breach of the Security Agreement in an amount exceeding $700,000.

3. An award of Plaintiff's attorney's fees, legal expenses and other costs or collection pursuant to the Note; and

4. That the Plaintiff be awarded any such other further and general relief to which it may be entitled.

DATED: July 29, 2009.

                                        */s/ Thomas J. Arenz*
                                        Thomas J. Arenz
                                        State Bar No. 1012328
                                        Eric J. Meier
                                        State Bar No. 1038127

                                        Attorneys for Plaintiff, TopRx, Inc.

                                        Whyte Hirschboeck Dudek S.C.
                                        555 East Wells Street
                                        Suite 1900
                                        Milwaukee, WI 53202
                                        Telephone: 414-273-2100
                                        Fax: 414-223-5000
                                        tarenz@whdlaw.com
                                        emeier@whdlaw.com

# NOTE

$622,500.00                                           Grafton, Wisconsin
                                                      April 15, 2007
                                                      MAY

    FOR VALUE RECEIVED, the undersigned promises to pay to the order of TopRx, Inc. the principal sum of Six Hundred Twenty-Two Thousand Five Hundred and 00/100 Dollars ($622,500.00), together with interest thereon at the rate of eight percent (8%) per annum.

    Each quarter, an amount equal to (i) any and all of accrued interest on the principal sum, and (ii) twenty percent (20%) of the gross sales of Cedarburg Generic, LLC, a Wisconsin limited liability company ("Cedarburg Generic") based on the gross sales during the immediately prior calendar quarter shall be due and payable. Such payments of principal and interest shall be due on January 15, April 15, July 15, and October 15 of each year until all of the principal and interest due hereunder are paid. For example, on July 15, 2007, Maker shall pay to Holder an amount equal to (i) all accrued and unpaid interest through July 15, 2007, plus (ii) an amount equal to twenty percent (20%) of Cedarburg Generic's gross sales from April 1, 2007 to June 30, 2007.

    All accrued interest, principal and any other sums due on this Note shall be due and payable on the third (3rd) anniversary of the date of this Note.

    This Note is collateralized by the following: 1) All assets of Cedarburg Generic, as evidenced by that certain Security Agreement, of even date herewith, by and among Cedarburg Pharmaceuticals, Inc. as Debtor, Cedarburg Generic as Guarantor, and TopRx, Inc., as Secured Party (the "Security Agreement"); and 2) Cedarburg Pharmaceuticals, Inc.'s one hundred percent (100%) interest in Cedarburg Generic (collectively, "Collateral"), as evidenced by the Security Agreement.

    The principal and interest of this Note is payable at 3141 Stage Post Drive, Bartlett, TN 38133, or such other place as the holder may designate in writing in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment.

    If Maker is past due on any payment due under this Note, this Note shall be deemed in default, the interest rate of the Note shall increase to the maximum rate allowed by law and the holder of this Note shall have the option to pursue all legal and equitable remedies available under Wisconsin law.

Page 1

Case 2:09-cv-00742-CNC   Filed 07/29/09   Page 6 of 15   Document 1
**EXHIBIT A**

If this Note is placed in the hands of an attorney for collection, by suit or otherwise, or to protect the security for its payment or to enforce its collection, the prevailing party will pay all costs of collection and litigation, including reasonable attorneys' fees, expenses and costs of appeal.

The undersigned expressly waives protest, demand, presentment and notice of dishonor, and agrees that this Note may be extended, in whole or in part, without limit as to the number of such extensions or the period or periods thereof and without notice to them and without affecting their liability thereon.

The word "undersigned" as used herein, shall be considered to mean and include all makers, endorsers and guarantors hereof. Words used in the plural herein shall include the singular, as the context may require, and if this Note is executed by two or more parties, the obligations and liabilities hereunder of such parties shall be joint and several.

At anytime, the privilege is reserved and given to make additional payments on the principal of this note prior to maturity.

This Note shall be governed and construed in accordance with the laws of the State of Wisconsin.

MAKER

CEDARBURG PHARMACEUTICALS, INC.,
a Delaware corporation

By: *Charles M. Boland*
Title: *Executive V.P.*

# SECURITY AGREEMENT

This Security Agreement is entered into as of the _15th_ day of _May_, 2007, by and among Cedarburg Pharmaceuticals, Inc., a Delaware corporation ("Debtor"), Cedarburg Generic, LLC ("Cedarburg Generic" or "Guarantor"), and TopRx, Inc., a Tennessee corporation ("Secured Party").

1. Grant of Security Interest: Collateral.

    (a) *Debtor Collateral.* To secure the obligations described in Section 2, Debtor hereby grants to Secured Party a security interest in all of the right, title and interest of Debtor's interest owned or hereinafter acquired in Cedarburg Generic, LLC. ("Debtor Collateral").

    (b) *Guarantor Collateral.* To secure the obligations described in Section 2, the Guarantor hereby grants to Secured Party a security interest in Guarantor's personal property (the "Guarantor Collateral") (collectively, with the Debtor Collateral, "Collateral") described as follows:

    i. All of Guarantor's machinery, equipment, and fixtures, at any location, including, but not limited to, that machinery and equipment located at 870 Badger Circle, Grafton, WI 53024, whether now existing or hereafter acquired;

    ii. All of the estate, interest, right, title and other claim or demand which Guarantor now has or may hereafter have or acquire with respect to insurance policies and proceeds of insurance in effect with respect to the above described;

    iii. All accessories, parts, additions, replacements, replenishments and substitutions to the items specified in subsections i. and ii above, and all whether now owned or hereafter acquired or created;

    iv. All of Guarantor's General Intangibles;

    v. All present and future accounts, accounts receivable, chattel paper, documents, and instruments (including any right to payment for goods sold or services rendered arising out of the sale or delivery of personal property or work done or labor performed by Guarantor), now or hereafter owned, held, or acquired by Guarantor, together with any and all books of account, customer lists and other records relating in any way to the foregoing (including, without limitation, computer software, whether on tape, disk, card, strip, cartridge or any other form), and in any case where an account arises from the sale of goods, the interest of Guarantor in such goods;

    vi. All present and hereafter acquired inventory held, possessed, owned, held on consignment, or held for sale or lease by Guarantor, whatever located.

1

EXHIBIT B

(c) Proceeds. The term "Collateral" shall also include all proceeds of any of the foregoing.

2. Obligations. The obligations secured by this Agreement ("Obligations") are the following:

(a) Any and all sums due to Secured Party by Debtor pursuant to the terms of that certain Purchase Agreement between the Debtor and Secured Party of even date herewith and that certain Promissory Note of even date herewith in the principal sum of Six Hundred Twenty-Two Thousand Five Hundred and 00/100 Dollars ($622,500.00);

(b) Any and all other sums due to Secured Party by the Debtor, whether direct or contingent, primary or secondary, sole, joint or several, now existing, or hereafter arising, including future advances, at any time before cancellation of this Security Agreement;

(c) Any and all sums advanced by Secured Party in order to preserve the Collateral or to perfect its security interest in the Collateral;

(d) In the event of any proceeding to enforce the collection of the Obligations, or any of them, after default, the reasonable expenses of retaking, holding, preparing for sale or selling or otherwise disposing of or realizing on the Collateral, or of any exercise by Secured Party of its rights in the event of default, together with reasonable attorneys' fees and court costs.

3. Representations, Warranties, and Promises. Debtor and Guarantor further represent, warrant, and agree:

(a) Each is the owner of their respective Collateral, as set forth in Section 1, and grants the security interest herein in consideration of the indebtedness stated above;

(b) Debtor and Guarantor will not hereafter grant a security interest in, or sell the Collateral to, any other person, firm, or corporation;

(c) Debtor and Guarantor will, at all times, defend the Collateral against any and all claims of any person adverse to the claims of Secured Party;

(d) Debtor and Guarantor will take such action and execute such documents as Secured Party may from time to time request to maintain a perfected security interest on the part of Secured Party in the Collateral (free of all other liens and claims whatsoever) to secure payment of the Obligations;

(e) Debtor and Guarantor will use the Collateral in conformity with all applicable laws and will pay all taxes and assessments on it or its use when due;

2

(f) Debtor and Guarantor have full power and authority to enter into this Agreement;

(g) The Collateral is free from any lien, security interest, encumbrance, or other right, title, or interest of any other person, firm, or corporation;

(h) The Guarantor Collateral is located at 870 Badger Circle, Grafton, WI 53024 and shall not be relocated to another address without the advance express written consent of Secured Party;

(i) Debtor and Guarantor will permit Secured Party to inspect the Collateral and any books and records of Debtor or Guarantor, as the case may be, relating thereto at any time during regular business hours; and

(j) Debtor and Guarantor will keep and maintain insurance upon all the Collateral, wherever located, covering casualty, hazard, and other risks, in such amounts and with such insurance companies as shall be reasonably satisfactory to Secured Party and deliver such certificates of insurance to Secured Party with satisfactory loss payable endorsements naming Secured Party as loss payee thereunder.

4. Events of Default. Debtor and Guarantor shall be in default under this Agreement upon the occurrence of any one or more of the following events or conditions:

(a) Nonpayment of any of the Obligations when due, whether by acceleration or otherwise, or nonperformance of any promise made by Debtor in this Agreement;

(b) Breach of any warranty made by Debtor and Guarantor in this Agreement;

(c) Use of the Collateral in violation of any statute or ordinance;

(d) The creation of any encumbrance upon the Collateral or the making of any levy, judicial seizure, or attachment thereof or thereon;

(e) Sale of all or any portion of the Collateral by Debtor or Guarantor other than in the ordinary course of business without the prior written approval of Secured Party;

(f) Insolvency of Debtor or Guarantor;

(g) The appointment of a receiver for any part of the property of Debtor or Guarantor, the making by Debtor or Guarantor of any assignment for the benefit of creditors, or the initiation by or against Debtor or Guarantor of any proceeding under the Federal Bankruptcy Act or any state insolvency law.

5. **Rights of Parties upon Default.** In the event of a default by Debtor or Guarantor, in addition to all the rights and remedies provided in Article 9 of the Wisconsin Uniform Commercial Code and any other applicable law, Secured Party may (but is under no obligation to Debtor or Guarantor to do so):

    (a) Take physical possession of Collateral and records Debtor and/or Guarantor pertaining to the Collateral which are necessary to administer properly and control the Collateral and sell, or otherwise dispose of the Collateral in whole or in part, at public or private sale, on or off the premises of Debtor and/or Guarantor;

    (b) Require Debtor or Guarantor to assemble the Collateral to which Debtor and/or Guarantor have or are entitled to possession at a place designated by Secured Party, which is reasonable and convenient to all parties;

    (c) Collect any and all money due or to become due and enforce in Debtor's and Guarantor's names all rights with respect to the Collateral;

    (d) Receive and open mail addressed to Guarantor; or

    (e) On behalf of Guarantor, endorse checks, notes, drafts, money orders, instruments, or other evidence of payment.

6. **Audit Rights of Secured Party.**

Debtor shall prepare and keep for a period of not less than two (2) years after the end of each calendar year, adequate books and records (conforming to Generally Accepted Accounting Principles, consistently applied) showing gross sales of Cedarburg Generic for each quarter during the term of this Agreement. Debtor shall furnish to Secured Party quarterly financial statements of Cedarburg Generic demonstrating the quarterly gross sales at the same time payment is due, as set forth in the note between the parties ("Note"). In addition, Secured Party or its duly authorized representatives, may, during regular business hours, inspect the corporate and financial records of Cedarburg Generic; *provided* such inspection is commenced within two (2) years after the end of the calendar quarter for which it is auditing. If Secured Party's audit discloses a deficiency ("Deficiency") in the amount due under the Note ("Amount Due") and the Deficiency for such period is less than five percent (5%) of the Amount Due, Debtor will promptly pay to Secured Party the amount of Deficiency. If such audit by Secured Party discloses a Deficiency equal to or in excess of five percent (5%) of the Amount Due, then Debtor will promptly pay Secured Party Deficiency, together with interest at the same rate as specified in the Note, in addition to all costs and expenses involved with such audit.

7. **Notice.**

    (a) Any notice of any sale, other disposition, or other intended action by Secured Party shall be deemed reasonable if it is in writing and deposited in the United States Mail ten (10)

4

days in advance of the intended disposition or other intended action, first class postage prepaid, and addressed to Debtor or Guarantor at its address set forth below, or any other address designated in a written notice by the Debtor or Guarantor previously received by Secured Party.

      (b)    All other notices and other communications hereunder shall be in writing and shall be deemed to have been sufficiently given or served if delivered in person or deposited for mailing with the Unites States postal service, registered or certified, return receipt requested, postage pre-paid, or with Federal Express Corporation and addressed to the party as set forth below:

      Debtor      Cedarburg Pharmaceuticals, Inc.
                      Attn: R. Anthony Laughrey, CEO
                      870 Badger Circle
                      Grafton, WI 53024

      Guarantor:    Cedarburg Generic, LLC
                      Attn: R. Anthony Laughrey
                      870 Badger Circle
                      Grafton, WI 53024

      Secured Party:    TopRx, Inc.
                      Attn: John Ray, President
                      3141 Stage Post Drive
                      Bartlett, TN 38133

8.    <u>Waiver</u>. Waiver by Secured Party of any Event of Default hereunder, or of any breach of the provisions of this Agreement by Debtor or Guarantor, or any right of Secured Party hereunder, shall not constitute a waiver of any other Event of Default or breach or right, nor of the same Event of Default or breach or right on a future occasion.

9.    <u>Law Governing</u>. This Agreement and the rights and obligations of the parties hereunder shall be construed and interpreted in accordance with the law of the State of Wisconsin.

10.    <u>Duration</u>. This Agreement shall remain in effect from the date first above mentioned until all of the Obligations have been fully satisfied.

11.    <u>Assigns</u>. This Agreement and all rights and liabilities hereunder and in and to any and all Collateral shall inure to the benefit of the Secured Party and its successors and assigns, and shall be binding on the successors and assigns of Debtor and Guarantor.

12.    <u>UCC Filings</u>. Debtor and Guarantor will cooperate with Secured Party so that Secured Party may make all necessary filings with the applicable state and county entities to secure Collateral. Debtor and/or Guarantor shall be responsible any taxes incurred from such filing.

5

Debtor and Guarantor acknowledges that this Agreement is and shall be effective upon execution by the Debtor and Guarantor and delivery to and acceptance hereof by the Secured Party, and it shall not be necessary for the Secured Party to execute any acceptance hereof or otherwise to signify or express its acceptance hereof to Debtor and Guarantor.

**DEBTOR:**

CEDARBURG PHARMACEUTICALS, INC.,
a Delaware corporation

By: *Charles M. Boland*
Title: *Executive V.P.*

**GUARANTOR:**

CEDARBURG GENERIC, LLC,
a Wisconsin limited liability company

By: *Charles M. Boland*
Title: *Executive V.P.*

**SECURED PARTY:**

TOPRX, INC.,
a Tennessee corporation

By: *[signature]*
Title: *President/CEO*

6

## ACKNOWLEDGMENTS

STATE OF Wisconsin )
)ss:
COUNTY OF Milwaukee )

    Before me, a notary public, of the state and county aforesaid, personally appeared Charles Boland, with whom I personally acquainted, and who, upon oath, acknowledged himself to be Exec. V.P. of Cedarburg Pharmaceuticals, Inc., the within named bargainor, a corporation, and that he as such Exec. V.P. executed the foregoing instrument for the purpose therein contained, by signing the name of the corporation by himself as Exec. V.P.

    WITNESS my hand and seal at office on this 30 day of July, 2007.

_____
Notary Public

My Commission Expires:

is permanent

STATE OF Wisconsin )
)ss:
COUNTY OF _____ )

    Before me, a notary public, of the state and county aforesaid, personally appeared Charles Boland, with whom I personally acquainted, and who, upon oath, acknowledged himself to be Exec. V.P. of Cedarburg Generic, LLC, the within named bargainor, a limited liability company, and that he as such Exec. V.P. executed the foregoing instrument for the purpose therein contained, by signing the name of the corporation by himself as Exec. V.P.

    WITNESS my hand and seal at office on this 30 day of July, 2007.

_____
Notary Public

My Commission Expires:

is permanent

7

STATE OF TENNESSEE )
                   )ss:
COUNTY OF SHELBY   )

Before me, a notary public, of the state and county aforesaid, personally appeared John T. Ray, with whom I personally acquainted, and who, upon oath, acknowledged himself to be President of TopRx, Inc., the within named bargainor, a corporation, and that he as such **President** executed the foregoing instrument for the purpose therein contained, by signing the name of the corporation by himself as **President**.

WITNESS my hand and seal at office on this 15th day of May, 2007.

*Anne Marie Dodd*
Notary Public

My Commission Expires:

**MY COMMISSION EXPIRES:
January 27, 2009**

K:\nichol\TOP_Rx 08040.24830\Cedarburg\Purchase\Security Agreement.doc

8